IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| FREDERICK A EVANS | § | |
|    Reg. #: 27502-044 | § | |
| v. | § | C.A. NO. C-11-317 |
| | § | |
| REBECCA TAMEZ | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT RESPONDENT'S MOTION TO DISMISS**

Petitioner is a federal prisoner currently incarcerated at the Federal Correctional Institution in Three Rivers, Texas. (D.E. 1). On September 16, 2011, he filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2241, challenging a disciplinary proceeding. Id. Pending is Respondent's motion to dismiss. (D.E. 20). Petitioner has failed to file a response.[1] For the reasons stated herein, it is respectfully recommended that Respondent's motion to dismiss be granted, and this habeas petition be dismissed.

## I. BACKGROUND

On December 8, 2009, Officer Kirksey conducted a random pat search on Petitioner while he was incarcerated at the Federal Correctional Institution in Fort Worth, Texas. (D.E. 1, at 13). After finding him in possession of gambling slips, Officer Kirksey escorted him to the staff bathroom for a more thorough strip search. Id. While in the staff bathroom, Petitioner refused to follow orders. Id. Officer Menken was called to assist in the search, but he continued to resist. Id. Both officers then saw Petitioner attempt to place a black bag in the ceiling. Id. Officer Kirksey retrieved the bag and discovered that it contained two MP3 players, a USB cable, and two memory cards. Id. Later that day, Petitioner was notified that he was being

---

[1] Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

charged with violating Code 108 for possessing a hazardous tool, Code 307 for refusing to obey an order of any staff member, and Code 326 for possession of gambling paraphernalia. Id. at 14.

A disciplinary hearing was held on December 16, 2009. Id. Petitioner did not request any witnesses and denied ownership of the black bag. Id. at 15, 17. At the conclusion of the hearing, the disciplinary hearing officer found that he committed the charged offenses. Id. at 15. The hearing officer relied on Officer Kirksey's report, Officer Menken's report, a photo sheet, and Associate Warden Susan Fick's memorandum specifying that electronic communication devices were considered hazardous tools. Id. at 15-16, 20. He also made a specific finding that "MP3 players are electronic communication devices and are therefore considered hazardous tools." Id. at 17. As a result, Petitioner was sanctioned with 41 days loss of good conduct time and 30 days of disciplinary segregation for possession of a hazardous tool, 180 days loss of commissary privileges for possession of gambling paraphernalia, as well as 180 days loss of visitation and phone privileges for refusing to obey staff orders. Id. at 17.

On January 7, 2010, Petitioner challenged the disciplinary action at the regional level, arguing that MP3 players were not electronic communication devices and therefore could not be considered hazardous tools. Id. at 21-22. He also pointed out that other inmates who were found with MP3 players were only charged with the lesser Code 305 offence of possessing an unauthorized item. Id. at 22. Finally, he protested that he was never notified about Warden Fick's memorandum announcing that electronic communication devices were hazardous tools. Id. Petitioner did not contest the finding of guilt for possession of gambling paraphernalia and refusing to obey staff orders. On March 10, 2010, Regional Director G. Maldonaldo, Jr. denied Petitioner's request for relief. Id. at 29. He concluded that Petitioner had adequate advance

notice that possession of an MP3 player was a prohibited act because Warden Fick's memorandum had been posted on the housing unit bulletin boards until the inmate handbook was revised. Id.

Petitioner again appealed the disciplinary action on March 22, 2010. Id. at 23. While he conceded that he possessed the MP3 player, he maintained that the MP3 player did not constitute a hazardous tool within the meaning of Code 108. Id. He also complained that Warden Fick's memorandum was arbitrary and capricious, as well as vague and ambiguous. Id. at 25. Finally, he argues that there was no showing at the disciplinary hearing that the memorandum had been posted. Id.

On August 27, 2010, Harrell Watts, the Administrator of National Inmate Appeals, denied this appeal after finding that inmates had been routinely provided notice of the memorandum since 2006. Id. at 24. In addition, he determined that a Code 108 offense was appropriate for the possession of an MP3 player "due to the disruptive nature of such devices in the correctional environment." Id. He also concluded that there was no requirement that Code 108 specify each item that might possibly be considered a hazardous tool falling within its purview. Id.

## II. PETITIONER'S ALLEGATIONS

Petitioner claims that possession of an unauthorized MP3 player cannot be classified as a Code 108 offense because an MP3 player is not a "hazardous tool." Id. at 3. As a result, he argues that his due process rights were violated because the disciplinary action was imposed in an arbitrary and capricious manner and because he did not have fair warning that possession of an MP3 player was a prohibited Code 108 act. Id. at 5-8. Instead, he contends that his offense

be reclassified as a Code 305 offense for possession of an unauthorized item, which would reduce the good conduct time lost by at least twenty-seven days. Id. at 3. Petitioner does not challenge the findings that he was in possession of gambling paraphernalia and refused to obey staff orders.

### III. DISCUSSION

Respondent urges that this petition be dismissed because Petitioner has not claimed that he was deprived of procedural due process as well as because he possessed constructive notice that possession of an MP3 player could result in a Code 108 violation. (D.E. 20, at 4-6).

**A.     Petitioner Has A Liberty Interest In His Good Time Credits.**

A petitioner challenging a disciplinary hearing must show that the punishment intrudes on a protected liberty interest "so as to entitle him to those minimum procedures appropriate under the circumstances and required by the due process clause to insure that the state-created right is not arbitrarily abrogated." Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997) (citation omitted); see also Malchi v. Thaler, 211 F.3d 953, 957 (5th Cir. 2000) ("Federal habeas relief cannot be had 'absent the allegation by a plaintiff that he or she has been deprived of some right secured to him or her by the United States Constitution....'") (citation omitted). The Supreme Court has explained that "these [liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ..., nonetheless imposes atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995) (citations omitted). The Fifth Circuit has further explained that "these interests are generally limited to state created regulations or statutes which affect the quantity of

time rather than the quality of time served by a prisoner." Madison, 104 F.3d at 767.

Good-time credits are not a right guaranteed by the Constitution. Id. at 768 (citing Wolff v. McDonnell, 418 U.S. 539, 557 (1974)). However, they become liberty interests protected by the minimum procedures guaranteed by the Fourteenth Amendment if a state creates a right in them and makes them revocable for misconduct. Id. The Fifth Circuit has held that federal prisoners have a protected liberty interest in good-time credits. Neal v. Casterline, 129 F. App'x 113, 114 (5th Cir. 2005) (per curiam) (unpublished) (citing Henson v. U.S. Bureau of Prisons, 213 F.3d 897, 898 (5th Cir. 2000) (per curiam)). Conversely, the temporary loss of telephone privileges does not implicate a liberty interest. Lewis v. Dretke, 54 F. App'x 795, 2002 WL 31845293, at *1 (5th Cir. Dec. 11, 2002) (per curiam) (unpublished). Similarly, neither placement in segregated confinement, Sandin, 515 U.S. at 486, nor commissary restrictions, Madison, 104 F.3d at 768, trigger cognizable liberty interests.

Respondent concedes that Petitioner has a liberty interest in his accumulated good-time credit. (D.E. 20, at 3). Accordingly, Petitioner has a liberty interest in his 41 days loss of good conduct time, but not his 180 days loss of commissary, visitation, and phone privileges, or his 30 days in segregated confinement. His claims proceed only insofar as they are based on his loss of good conduct time. In any event, Petitioner only challenges the loss of good-time credits in this action. (D.E. 1, at 3).

**B.     Petitioner Was Afforded Adequate Procedural Due Process.**

The Supreme Court has explained that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at 556 (citation omitted); Broussard v. Johnson, 253 F.3d 874, 876 (5th

5

Cir. 2001) (per curiam) (citing Wolff). In Wolff, the Supreme Court held that due process requires an inmate facing a disciplinary action be provided: (1) a written notice of the disciplinary action charges, at least twenty-four hours before the hearing; (2) a written statement by the fact finder of the evidence and reasons for the disciplinary action; and (3) an opportunity to present evidence and call witnesses in his defense, if not unduly hazardous to institutional safety or correctional goals. 418 U.S. at 564-66.

    **1.    Petitioner was provided a written notice of charges.**

Petitioner has submitted his disciplinary records, which indicate that he was notified on December 8, 2009 that he was being charged with possessing a hazardous tool. (D.E. 1, at 14). The disciplinary proceeding did not occur until December 16, 2009. Id. None of these facts are disputed. Therefore, Wolff's notice requirement was satisfied.

    **2.    Petitioner was provided a statement by the fact-finder of the evidence and reasons for the disciplinary action.**

Petitioner was also provided with a written report of the disciplinary hearing, which enunciated the reason for the disciplinary action and the punishment imposed. (D.E. 1, at 16-17). The report listed the evidence on which the hearing officer relied–Officer Kirksey's report, Officer Menken's report, a photo of the contraband found on him, and Warden Fick's memorandum. Id. at 16. Therefore, Wolff's requirement for a written statement by the fact-finder of the evidence and the reasons for the disciplinary action has been met.

    **3.    Petitioner had sufficient opportunity to call witnesses and present evidence.**

The Supreme Court has expressly rejected the proposition that inmates have an unrestricted right to call witnesses due to the "obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out

the correctional program of the institution." Wolff, 418 U.S. at 566. An inmate's due process right to present evidence and call witnesses in his defense does not extend to confrontation and cross-examination. Houser v. Dretke, 395 F.3d 560, 562 (5th Cir. 2004). Prison officials therefore possess considerable discretion to "limit access to other inmates to collect statements or to compile other documentary evidence." Wolff, 418 U.S. at 566.

At the disciplinary hearing, Petitioner declined to call witnesses and presented no documentary evidence. (D.E. 1, at 16). He does not complain that he was prevented from presenting evidence in his favor, and he does not actually attack the disciplinary proceeding for depriving him of any specific protections mandated by Wolff. Accordingly, all the Wolff requirements are met, and it is respectfully recommended that he was afforded adequate procedural due process.

**C.     There Was Sufficient Evidence To Support The Disciplinary Conviction.**

In federal habeas petitions, review of the evidentiary support for a hearing officer's decision is extremely limited; due process requires only "some evidence to support the findings made in the disciplinary hearing." Superintendent, Mass. Corr. Inst., Walpole v. Hill, 472 U.S. 445, 457 (1985); see also Broussard, 253 F.3d at 877 ("Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision.") (citation omitted). Even where there is no direct evidence and the existing evidence is meager, the findings may still be sufficient to support disciplinary sanction. Hill, 472 U.S. at 457. A federal court should not disturb a hearing officer's decision unless the petitioner can show that it was arbitrary and capricious. Id.; Banuelos v. McFarland, 41 F.3d 232, 234 (5th Cir. 1995) (per curiam) (citation omitted). Specifically, the Fifth Circuit has explained that an offense report by itself, written by

7

an officer with firsthand knowledge, is "some evidence" to support the prison disciplinary board's finding of guilt. Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001) (citation omitted).

In this case, the hearing officer based his guilty finding on the written memoranda of Officer Kirksey and Officer Menken, the photograph of the MP3 players, the charger, the memory cards, and the gambling slips found in Petitioner's possession. (D.E. 1, at 16). Furthermore, he found that Petitioner admitted to committing some of the offenses and found no merit in his argument that he was not actually in possession of the electronic devices simply because the officers had taken it from the ceiling.[2] Therefore, it is respectfully recommended that the hearing officer's finding that Petitioner was actually in possession of an MP3 player was supported by more than just "some evidence." Hill, 472 U.S. at 457.

**D.      Code 108 Was Properly Applied.**

Petitioner challenges the determination that possession of an MP3 player constitutes a possession of a hazardous tool within the meaning of Code 108. The hearing officer found the argument that an MP3 player was not a hazardous tool unpersuasive in light of Warden Fick's memorandum warning inmates that possession of an electronic communication device or related equipment may be charged with a Code 108 offense. (D.E. 1, at 17). In rejecting this argument, he specifically determined that "MP3 players are electronic communication devices and are therefore considered hazardous tools." Id.

Petitioner attacks Warden Fick's memorandum banning "electronic communications

---

[2] Petitioner eventually conceded that he possessed the MP3 player when appealing the disciplinary action. (D.E. 1, at 23). Correspondingly, this petition does not attack the disciplinary proceeding on the basis that he did not actually possess the MP3 player.

8

device[s] or related equipment" as being "too vague and arbitrary," (D.E. 1, at 6-7), and he seems to imply that any reliance on this memorandum by the hearing officer was arbitrary and capricious by extension. In addition, Petitioner contests the characterization of an MP3 player as an "electronic communication device or related equipment" as an initial matter. Id. at 6. Finally, he asserts that he did not have fair warning that possession of an MP3 player would expose him to a Code 108 violation, and he alleges that prison officials never discussed the policy nor posted the memorandum anywhere. Id. at 7.

At the time Petitioner was charged, regulations promulgated by the Bureau of Prisons ("BOP") defined a Code 108 offense as the "[p]ossession, manufacture, or introduction of a hazardous tool (Tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade)." BOP Prohibited Acts And Disciplinary Severity Scale, 28 C.F.R. § 541.13, Table 3 (2009). Warden Fick's July 13, 2006 memorandum clarified the BOP's stance with regard to possession of electronic devices:

> Inmates found in possession of an electronic communication device or related equipment may be charged with a violation of Bureau of Prisons' disciplinary rules, specifically, Prohibited Act Code 108, Possession, Manufacture, or Introduction of a Hazardous Tool, or Prohibited Act 199, Conduct Which Disrupts or Interferes with the Security of Orderly Running of the Institution, most like Prohibited Act Code 108. Inmates found in violation of Bureau of Prisons' disciplinary rules will be subject to appropriate disciplinary sanctions.

(D.E. 1, at 20). This treatment of electronic communication devices as a "Greatest severity level prohibited act" was later incorporated into a BOP Program Statement with an effective date of

August 1, 2011.³ Dep't of Justice, BOP, Program Statement 5270.09: Inmate Discipline Program 2 (July 8, 2011), available at http://www.bop.gov/policy/progstat/5270_009.pdf.

### 1. The Hearing Officer properly relied on Warden Fick's memorandum.

In effect, Warden Fick's memorandum constitutes the BOP's interpretation of its own penal regulations. Controlling precedent dictates a two-step inquiry when analyzing an agency's interpretation of a regulation it has promulgated:

> First, the court must ask whether the regulation is "ambigu[ous] with respect to the specific question considered. Second, if the regulation is ambiguous, the agency's interpretation ... is "controlling unless plainly erroneous or inconsistent with the regulation." If the regulation is unambiguous, the court may still consider the agency's interpretation, but only according to its persuasive power.

Texas Clinical Labs, Inc. v. Sebelius, 612 F.3d 771, 776 (5th Cir. 2010) (citing Christensen v. Harris Cnty., 529 U.S. 576, 588 (2000); Auer v. Robbins, 519 U.S. 452, 461 (1997); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)). An agency's interpretation is plainly erroneous or inconsistent with the regulation if "the interpretation does not reflect the agency's fair and considered judgment on the matter in question" or if it amounts to "a 'post hoc rationalizatio[n]' advanced by an agency seeking to defend past agency action against attack." Auer, 519 U.S. at 462 (citation omitted). The form of the agency's interpretation is immaterial. See Talk America, Inc. v. Michigan Bell Tel. Co., __ U.S. __, 131 S. Ct. 2254, 2260-61 (2011) (applying Auer deference to an agency's interpretation of its regulations in legal briefs, including amicus briefs)

---

³ Petitioner claims that Program Statement 5270.09 specifically categorized possession of an unauthorized MP3 player as a 300 level prohibited act. (D.E. 1, at 3). A review of Program Statement 5270.09, however, does not reveal any reference to the status of unauthorized MP3 players. Moreover, because Program Statement 5270.09 came into effect subsequent to Petitioner's disciplinary conviction, it is not applicable and further discussion of this document is omitted.

Case 2:11-cv-00317 Document 21 Filed in TXSD on 04/12/12 Page 11 of 18

(citing Chase Bank USA, N.A. v. McCoy, __ U.S. __, 131 S. Ct. 871, 880, 881 (2011)); Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 171 (2007) (according Auer deference to an agency's interpretation of its regulations set forth in an "Advisory Memorandum" issued only to internal agency personnel and authored in response to the Coke litigation) (citing Auer, 519 U.S. at 462).

From the outset, it must be observed that Code 108 is ambiguous as to the definition of "hazardous tool." Although the regulation provides that these tools are "most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety," it only provided one example at that time–a hack-saw blade. 28 C.F.R. § 541.13. Nevertheless, a wide variety of non-weapon tools can be considered "hazardous to institutional security," including consumer electronic devices. See Hicks v. Yost, 377 F. App'x 223, 224-25 (3d Cir. 2010) (per curiam) (unpublished) (granting deference to BOP's interpretation of Code 108 that cell phones were hazardous tools). In fact, this regulation's most current version has elaborated that "hazardous tools" includes any "portable telephone, pager, or other electronic device." BOP Prohibited Acts And Available Sanctions, 28 C.F.R. § 541.3 (2011). Compounding to the uncertainty is Petitioner's allegation that the BOP has begun permitting inmates to purchase and use authorized MP3 players. (D.E. 1, at 3). Because versatile electronic devices such as MP3 players are not automatically excluded or included within the scope of the nebulous term "hazardous tool" as a definitional matter, the regulation is ambiguous.

Next, it cannot be said that the BOP's interpretation of Code 108 is plainly erroneous or inconsistent with the regulation. Courts have consistently upheld the BOP's treatment of

electronic communication devices as hazardous tools because "these devices and related components are frequently used by inmates to circumvent inmate phone monitoring, and to assist inmates in escaping from prison by keeping inmates informed of special counts and staff locations, which poses a threat to the security of the institution, its inmates and staff." Douglas v. Zickefoose, No. 11-406, 2012 WL 266364, at *15 (D.N.J. Jan. 27, 2012) (unpublished) (collecting cases). Given that the BOP's rationale for prohibiting "electronic communication device[s] or related equipment" pursuant to Code 108 reflects the BOP's fair and considered judgment on this issue, Auer, 519 U.S. at 462, it is respectfully recommended that its interpretation of Code 108 be given deference. It is further respectfully recommended that the hearing officer's reliance on the BOP's interpretation of Code 108 was proper.

    **2.    The Hearing Officer's determination that an MP3 player is an electronic communication device such that it constitutes a hazardous tool was proper.**

Although the hearing officer held that "MP3 players are electronic communication devices" without providing any further explanation, Respondent's brief articulates the basis behind the BOP's treatment of an MP3 player as a hazardous tool:

> The BOP's treatment of an MP3 [player] as an "electronic communication device or related equipment" is reasonable, since it is possible and foreseeable that an MP3 [player] introduced into the institution by unauthorized means, as was the case here, could contain an audio recording of escape plans, or planned acts of violence, or other communications which would clearly endanger the security, orderly running, and safety of the institution.

(D.E. 20, at 5-6). On the other hand, Petitioner has alleged that the BOP has begun selling MP3 players to inmates at commissaries and that inmates are transferring to Fort Worth FCI with authorized MP3 players. (D.E. 1, at 3). He also argues that an MP3 player is not an "electronic communication device," but rather "an entertainment/leisure device or radio." Id. at 6.

12

Even if, as Petitioner contends, MP3 players are not categorically dangerous, the BOP's strict regulation of these electronic devices is not unreasonable in light of its stated fear that such unauthorized devices present. Courts have recognized that the proliferation of unauthorized MP3 players represents a real threat and that possession of such devices constitutes a violation of Code 108. See Cordoba v. Shartle, No. 4:09-3015, 2010 WL 2572854, at *6 (N.D. Ohio June 23, 2010) (unpublished) (possession of an iPod warranted a Code 108 sanction); Ausberry v. Grondolsky, No. 08-4136, 2008 WL 4225174, at *5 (D.N.J. Sept. 9, 2008) (unpublished) (possession of MP3 player violated Code 108 because such devices have "the ability to receive information recorded by others outside of the prison that is unmonitored by staff" and "could be useful to arrange an escape, assaults or other disruptive behavior within a BOP facility"). The fact that other inmates possess authorized MP3 players therefore does not show that the BOP's concern regarding unauthorized MP3 players is unfounded.

Contrary to Petitioner's assertion, an MP3 player can be a communication device if utilized in the manner the BOP described. He does not dispute the possibility that audio recordings of escape plans and other dangerous communications can be pre-loaded into MP3 players or their memory cards for unauthorized distribution among the inmate population. Furthermore, any MP3 players with built-in recording capabilities would pose an additional threat because such devices can allow inmates to create new communications for illicit purposes. Due to these legitimate threats to institutional security that unauthorized MP3 players present, it is respectfully recommended that the hearing officer's treatment of Petitioner's MP3 player as an "electronic communication device" and therefore a "hazardous tool" was proper.

### 3. Petitioner was on notice regarding the prescribed conduct.

Petitioner maintains that he "did not have any notice that a [sic] possession of an MP3 player was a prohibited act Code 108 [sic] exposing him to a risk of 41 days disallowance of Good Conduct Time." (D.E. 1 at 5). He also adds that he had no knowledge about Warden Fick's memorandum:

> [Warden Fick's] memo was not discussed or disseminated in a housing unit town hall meeting where the Unit Manager delivers updated policy information ..., the Fick Memo was not posted in the law library and it is not on file in the Law Library and [Petitioner] never saw it posted on a bulletin board in his housing unit.

Id. at 7. Respondent answers that "[t]he BOP's position is that an inmate has constructive notice of items, such as the 'Fick Memo', which are posted in housing units." (D.E. 20, at 5).

Due process does not permit the punishment of inmates "for acts which they could not have known were prohibited." Reeves v. Pettcox, 19 F.3d 1060, 1061 (5th Cir. 1994) (per curiam) (citing Adams v. Gunnell, 729 F.2d 362, 369 (5th Cir. 1984)). The Fifth Circuit has recognized that inmates are entitled to "fair warning that their conduct was prescribed" before a severe sanction can be imposed. Adams, 729 F.2d at 369. Prison regulations must "'give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'" Id. at 368-69 (quoting Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). An inmate can either have actual notice or constructive notice of prohibited conduct. See Reeves, 19 F.3d at 1061 (inmate in solitary confinement was not on notice regarding a new prison regulation because he was neither provided a memorandum notifying prisoners about the change nor was he given a "meaningful opportunity to read the bulletin board" on which the memorandum was posted). When interpreting an existing prison regulation, however, the Fifth

Circuit warns against engaging in "'legalistic wrangling' over the meaning of prison rules" and has expressed a preference for granting "defer[ence] to the interpretation of those rules by prison authorities 'unless fair notice was clearly lacking.'" Adams, 729 F.2d at 369 (citations omitted).

It is undisputed that Code 108, which prohibited possession of "hazardous tools," was in existence long before the events underlying this action. Despite the fact that the term "hazardous tools" is general in nature, the Fifth Circuit has held that such general language can be properly applied if they are "adequate for their purpose" after considering "the setting of the prison milieu and the need for control and discipline." Gibbs v. King, 779 F.2d 1040, 1045-46 (5th Cir. 1986). In other words, if the conduct proscribed comports with the purpose of the regulation, the fact that the regulation uses general terms of prohibition does not operate to deprive an inmate of notice.

The BOP seeks to enforce Code 108 on possession of an unauthorized MP3 player on the basis that it is a "hazardous tool." Enforcing Code 108 in this context corresponds to that regulation's purpose because unauthorized MP3 players can indeed be hazardous tools that are "most likely to be used in an escape or escape attempt ...; or [are] hazardous to institutional security or personal safety." 28 C.F.R. § 541.13. Given that Petitioner has asserted that the BOP permits the possession of authorized MP3 players, an inmate in possession of an unauthorized player will likely be using it for some dangerous purpose. Other courts have also found that the language of Code 108 can be expanded to include electronic communication devices without encountering a due process impediment. See Evans v. Martin, No. 1:11-cv-682, 2012 WL 610978, at *1 (E.D. Tex. Feb. 24, 2012) (unpublished) (collecting cases to support finding that a petitioner was sufficiently on notice that the terms of Code 108 implicitly banned possession of

15

cell phones). Accordingly, it is respectfully recommended that this due process claim is without merit because fair notice was not "clearly lacking."[4]  Adams, 729 F.2d at 369 (citations omitted).

**E.     Petitioner's Equal Protection Claim Lacks Merit.**

Petitioner also appears to assert an equal protection claim on the basis that other similarly situated inmates who were found with unauthorized MP3 players were found guilty of a less serious violation of Code 305 for possession of unauthorized items. (D.E. 1, at 2). Respondent counters that he has failed to claim that the alleged disparate treatment constituted discrimination on the basis of some suspect category. (D.E. 20, at 4).

To succeed in an equal protection challenge, a petitioner must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated. McCleskey v. Kemp, 481 U.S. 279, 292 (1987). The petitioner must have more than a personal belief that he was the victim of discrimination; he must show that the decisionmakers in his case acted with a discriminatory purpose. See Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995) (per curiam). The Fifth Circuit has determined that "discriminatory purpose" implies that a particular course of action was selected "at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." Id.  Moreover, the petitioner must show "some specific kind of outlawed discrimination." Wendt v. Lynaugh, 841 F.2d 619, 621 (5th Cir. 1988).

The mere fact that prison officials charged the petitioner with a Code 108 violation

---

[4] Petitioner seems to broadly contest the notion that Warden Fick's memorandum was ever publicized to the inmate population. (D.E. 1, at 7, 22). Therefore, the fact that he acknowledged that Warden Fick's memorandum "was put up in 2006" does not appear to amount to a concession that it was actually posted in a housing unit. Id. at 15. In addition, although Regional Director Maldonaldo asserted that Warden Fick's memorandum was indeed posted on the housing unit bulletin boards, id. at 28, there was no specific finding of fact by the hearing officer that Warden Fick's memorandum had been posted. Id. at 16-17. Regardless of whether the memorandum was actually posted, the terms of Code 108 were sufficient to put Petitioner on notice that possession of an unauthorized MP3 player subjected him to the most serious penalties.

instead of a lesser Code 305 violation failed to state an equal protection claim because "he has alleged nothing to indicate that his disciplinary sanction was the result of purposeful discrimination." Douglas, 2012 WL 266364, at *16. Because Petitioner has failed to even allege that he was part of an identifiable group and that prison officials were motivated by discriminatory purpose, it is respectfully recommended that his equal protection claim is without merit.

## IV. RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion to dismiss, (D.E. 20), be granted, and this habeas petition, (D.E. 1), be dismissed.

Respectfully submitted this 12th day of April 2012.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).